**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

---

|  |  |  |
|---|---|---|
| KIM LAIN | ) | |
| 118 Whiting St. | ) | |
| Galveston, TX  77550 | ) | |
|  | ) | |
|  | ) | |
| *Plaintiff,* | ) | |
|  | ) | |
| v. | ) | Case No.  3:24-cv-131 |
|  | ) | |
| U.S. DEPARTMENT OF JUSTICE | ) | |
| 950 Pennsylvania Avenue, N.W. | ) | |
| Washington, D.C.  20530 | ) | |
|  | ) | |
| *Defendant.* | ) | |

---

### <u>COMPLAINT AND PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

Plaintiff KIM LAIN ("Plaintiff") for her complaint against Defendant U.S.

DEPARTMENT OF JUSTICE ("DOJ" or "Department") alleges on knowledge as to Plaintiff,

and on information and belief as to all other matters, as follows:

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,

to compel the production of records from DOJ, related to an August 6, 2020, defensive briefing

the Federal Bureau of Investigation ("FBI") provided to Senators Charles Grassley and Ron

Johnson in reference to their Congressional investigation of Hunter Biden's foreign business

dealings ("August 6 Briefing").  *See* FOIA Request No. 1591528 (Apr. 26, 2023) ("Request" or

"Plaintiff's FOIA Request") (Ex. 1).  Plaintiff's FOIA Request seeks to answer one question at

the center of the controversy of the August 6 Briefing:  "Did the FBI set up two Members of

Congress for political attack under the guise of a 'defensive briefing'?"  The Editorial Board, *The FBI's Dubious Briefing*, The Wall Street Journal (May 4, 2021) (Ex. 2).

2.      This is a case of obfuscation and obstruction by the FBI on multiple fronts.  The requested information is critical to understanding the scope of the politicization and weaponization of the FBI.  For years, the FBI has refused to provide Congress, including Senators Grassley and Johnson themselves, information about the August 6 Briefing.  The FBI has made it inordinately difficult for Plaintiff to receive information about the Request—refusing to provide correspondence about the Request via email and instead resorting to mailing all relevant correspondence, which has resulted in unnecessary delays in resolving the Request.  The end result has been the same; nearly one year after Plaintiff submitted her FOIA request, she has received the same amount of responsive records Congress has about the briefing—zero.  The public deserves to know the scope of FBI interference and obstruction in Congressional investigations and intimidation of Congressional Committee Chairmen carrying out their oversight responsibilities.

## PARTIES

3.      Plaintiff Kim Lain ("Lain") is a Galveston, Texas-based contributor for *The Daily Signal*.  Kim Lain, Daily Signal, *found at* https://www.dailysignal.com/author/kimlain/ (last visited May 13, 2024).  Lain both lives and works in Galveston.   She has lived in Galveston for approximately five years.  *The Daily Signal* is a "digital-first, multimedia news platform" that "delivers investigative and feature reporting and the most important political news and commentary."  About The Daily Signal, *found at* https://www.dailysignal.com/daily-signal (last visited May 13, 2024).  *The Daily Signal* is the news organization of the Heritage Foundation, a Washington, D.C.-based nonpartisan public policy organization.  Heritage is a not-for-profit

section 501(c)(3) organization which engages in substantial dissemination of information to the public.

4.      Defendant DOJ is a federal agency of the United States within the meaning of 5 U.S.C. § 552(f)(1) whose mission is to "uphold the rule of law, to keep our country safe, and to protect civil rights."  DOJ Mission, *found at* https://www.justice.gov/about (last visited May 13, 2024).

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) because the Plaintiff resides in the Southern District of Texas, and 28 U.S.C. § 1331 because the resolution of disputes under FOIA presents a federal question.

6.      Venue is proper in this Court under both 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred in the Galveston Division of the Southern District of Texas, and under 5 U.S.C. § 552(a)(4)(B) in that Plaintiff "resides" in the Galveston Division of the Southern District of Texas and Plaintiff also maintains her "principal place of business" in the Galveston Division of the Southern District of Texas.

## BACKGROUND

7.      During the 116th Congress (2019–2021), the Committees on Finance, then Chaired by Senator Charles Grassley and Homeland Security and Governmental Affairs, then Chaired by Senator Ron Johnson conducted a joint investigation into potential conflicts of interest and other issues stemming from Hunter Biden's foreign business dealings.  The investigation culminated with a joint Majority Committee Staff Report issued on September 23, 2020, entitled, *Hunter Biden, Burisma and Corruption:  The Impact on U.S. Government Policy and Related Concerns* (Sept. 23, 2020) ("Grassley-Johnson Report") (Ex. 3).  On November 18,

2020, Senators Grassley and Johnson released a supplemental document "based on new records that confirm the connection between the Biden family and the communist Chinese government, as well as the links between Hunter Biden's business associates and the Russian government . . . ."  Majority Staff Report Supplemental, Committee on Finance, Committee on Homeland Security and Governmental Affairs, 5 (Nov. 18, 2020) (Ex. 4).  The investigation and reports were "based in large part on Obama Administration government records and almost a dozen transcribed interviews of government officials."  168 Cong. Rec. S1796–97 (daily ed. Mar. 28, 2022) (statement of Sen. Charles Grassley) (Ex. 5); *see generally*, *Hearing on the Weaponization of the Federal Government, Before the Select Subcomm. on the Weaponization of Gov't of the H. Comm. on the Judiciary* 118th Cong. (2023) (statement of Senator Charles Grassley) (Ex. 6). The reports also drew on Hunter Biden's bank records obtained by the Committee and made public for the first time.  *Id*.

8.  On July 17, 2020, then-Speaker of the House Nancy Pelosi, along with then-Senate Minority Leader Charles Schumer, then-Vice Chairman of the Senate Select Committee on Intelligence Mark Warner, and then-Chairman of the House Permanent Select Committee on Intelligence Adam Schiff sent a public letter with a classified attachment to the FBI requesting a defensive counterintelligence briefing for all members of Congress "regarding foreign efforts to interfere in the 2020 presidential election."  Letter from Speaker Nancy Pelosi, S. Minority Leader Chuck Schumer, Chairman Adam Schiff, H. Select Comm. on Intelligence, and Vice Chairman Mark Warner, S. Select Comm. on Intelligence, to Fed. Bureau of Investigation, 1 (July 13, 2020) (Ex. 7).  The Members wrote that they were "gravely concerned, in particular, that Congress appears to be the target of a concerted foreign interference campaign, which seeks

to launder and amplify disinformation in order to influence congressional activity, public debate, and the presidential election in November." *Id*.

9.      After the public letter, the FBI offered a defensive briefing to Senators Johnson and Grassley on behalf of the FBI and Intelligence Community, which occurred on August 6, 2020.  The Senators did not request or otherwise solicit the August 6 Briefing.  According to Senators Grassley and Johnson, the unsolicited briefing was "unnecessary and was only done because of pressure from [their] Democratic colleagues, including Democratic Leadership, to falsely attack [their] Biden investigation as advancing Russian disinformation."  Letter from Sen. Charles Grassley, Ranking Member, S. Comm. on the Judiciary, and Sen. Ron Johnson, Ranking Member, S. Perm. Subcomm. on Investigations, to Nikki Flores and Bradley Benavides, Fed. Bureau of Investigation, 1 (Aug. 25, 2022) (Ex. 8).  According to Senator Johnson, the briefing was a "setup" in which the Senators learned "no new information whatsoever" about purported links to their Hunter Biden investigation and Russian disinformation.  *Threats to the Homeland, Hearing before the S. Comm on Homeland Security and Governmental Affairs*, 41, 117th Cong. (2022) (C.Q. Trans.) (Ex. 9).  When asked about the briefing at a Congressional hearing, FBI Director Christopher Wray refused to discuss the matter publicly.  *Id*. at 42.

10.      On September 23, 2020, Senator Ron Wyden, then-Ranking Member of the Senate Finance Committee and Senator Gary Peters, then-Ranking Member of the Senate Committee on Homeland Security and Governmental Affairs issued a press release attacking the Grassley-Johnson Report, saying without evidence the report was "rooted in Russian disinformation and intended to influence the presidential election."  Press Release, *Peters, Wyden Respond to Republican Effort to Amplify Russian Disinformation & Manufacture Dirt on Vice President Biden*, S. Comm. on Homeland Security and Governmental Affairs, 2 (Sept. 23,

2020) (Ex. 10).  The Senators further accused Senators Grassley and Johnson of "amplif[ying] a known Russian attack on our election, and have used the credibility of the United States Senate to advance these discredited narratives, *despite warnings from the Intelligence Community*, the national security experts they interviewed of the course of their investigation, and Trump Administration officials."  *Id*. (emphasis added).  Recall Senators Grassley and Johnson received the briefing on August 6; however, it is unclear what "warnings from the intelligence community" Senators Peters and Wyden were referring to in the press release.

11.     Approximately nine months after the briefing, the contents of the briefing leaked to the *Washington Post* and were made public in a May 1, 2021, article entitled, *FBI was aware prominent Americans, including Giuliani, were targeted by Russian influence operation*, Washington Post (May 1, 2021) (Ex. 11).  Citing anonymous FBI sources, the article read in pertinent part:

> The FBI last summer also gave what is known as a defensive briefing to Sen. Ron Johnson (R-Wis.), who ahead of the election used his perch as chairman of the Senate Homeland Security and Governmental Affairs Committee to investigate Biden's dealings with Ukraine while he was vice president and his son Hunter Biden held a lucrative seat on the board of a Ukrainian energy company.
>
> Johnson, a staunch Trump ally, recalled receiving a vague warning from FBI briefers in August, but he said Thursday that there was no substance to their cautionary message and that he did not view the meeting as a "defensive briefing" on his oversight of the Biden family's foreign business ventures.
>
> "Regarding reports that I received an FBI briefing warning me that I was a target of Russian disinformation, I can confirm I received such a briefing in August of 2020," Johnson said in a statement to The Washington Post.  "I asked the briefers what specific evidence they had regarding this warning, and they could not provide me anything other than the generalized warning.  Without specific information, I felt the briefing was completely useless and unnecessary (since I was fully aware of the dangers of Russian disinformation).
>
> "Because there was no substance to the briefing, and because it followed the production and leaking of a false intelligence product by Democrat leaders, I suspected that the briefing was being given to be used at some future date for the

purpose that it is now being used:  to offer the biased media an opportunity to falsely accuse me of being a tool of Russia despite warnings."

Johnson and staffers to Sen. Charles E. Grassley (R-Iowa), another Trump ally in the Senate who aided Johnson with his probe, said that in separate briefings earlier in 2020, FBI officials assured them there was no reason to discontinue their inquiry into Hunter Biden's work in Ukraine.  It is not the bureau's place to tell lawmakers what to investigate or not, or whether to stop or start an investigation, former FBI officials said.

*Id*.

## <u>CONGRESSIONAL OVERSIGHT OF THE AUGUST 6 BRIEFING</u>

12.     Senators Grassley and Johnson have repeatedly sought information from the FBI about the briefing in oversight letters and Congressional testimony.  They found the FBI's response to their oversight wanting.

13.     On August 12, 2020—six days after the briefing—Senator Grassley requested the FBI and DOJ produce intelligence products referenced in the August 6 Briefing and the FD-302 or similar summary document memorializing the briefing.  *See* Letter from Charles Grassley, Chairman, S. Comm. on Finance, to William Barr, Att'y Gen., and Christopher Wray, Director, Fed. Bureau of Investigation (Aug. 12, 2020) (Ex. 12).  He requested the materials be produced to him by August 17, 2020.  *Id*.  It does not appear that the Department complied with the request.

14.     On May 3, 2021, Senators Grassley and Johnson wrote to Director Wray and Director of National Intelligence ("DNI"), Avril Hines, about the leak of the August 6 Briefing. *See* Letter from Sen. Charles Grassley, Ranking Member, S. Comm. on the Judiciary, and Sen. Ron Johnson, Ranking Member, Permanent Subcomm. on Investigations, S. Comm. on Homeland Security and Governmental Affairs, to Christopher Wray, Director, Fed. Bureau of Investigation, and Avril Haines, Director of National Intelligence, 1 (May 3, 2021) (Ex. 13).  The Senators wrote, "we made clear to the FBI briefers on August 6, 2020, that the briefing was not

relevant to the substance of our work.  We also made clear our concern that the briefing would

be subject to a leak that would shed a false light on the focus of our investigation.  Indeed, last

week's article did exactly that."  *Id*.  The letter highlighted the promises the Senators received

that the briefing would remain confidential and expressed displeasure the FBI and ODNI

allegedly broke those promises.  *Id*.  The Senators requested a meeting with the FBI Director and

DNI as well as a series of documents connected to the briefing including briefing notes,

intelligence products, and information related to the decision to offer the briefing to the senators.

*Id*.  They requested the information be provided by May 10, 2021.  *Id*.

15.     On July 25, 2022, Senator Grassley—for the third time—requested information

and documents about the August 6 Briefing.  *See* Letter from Sen. Charles Grassley, Ranking

Member, S. Comm. on the Judiciary to Merrick Garland, Att'y Gen., and Christopher Wray,

Director, Fed. Bureau of Investigation (July 25, 2022) (Ex. 14).  He also raised serious concerns

he received from FBI whistleblowers about FBI conduct. Senator Grassley wrote, in part:

> The information provided to my office involves concerns about the FBI's receipt
> and use of derogatory information relating to Hunter Biden, and the FBI's false
> portrayal of acquired evidence as disinformation.  The volume and consistency of
> these allegations substantiate their credibility and necessitate this letter.
>
> *First, it's been alleged that the FBI developed information in 2020 about Hunter
> Biden's criminal financial and related activity.  It is further alleged that in August
> 2020, FBI Supervisory Intelligence Analyst Brian Auten opened an assessment
> which was used by a FBI Headquarters ("FBI HQ") team to improperly discredit
> negative Hunter Biden information as disinformation and caused investigative
> activity to cease.  Based on allegations, verified and verifiable derogatory
> information on Hunter Biden was falsely labeled as disinformation.*
>
> The basis for how the FBI HQ team selected the specific information for inclusion
> in Auten's assessment is unknown, but in more than one instance the focus of the
> FBI HQ team's attention involved derogatory information about Hunter Biden.
> Accordingly, the allegations provided to my office appear to indicate that there
> was a scheme in place among certain FBI officials to undermine derogatory
> information connected to Hunter Biden by falsely suggesting it was
> disinformation.

*Importantly, it's been alleged to my office that Auten's assessment was opened in August 2020, which is the same month that Senator Johnson and I received an unsolicited and unnecessary briefing from the FBI that purportedly related to our Biden investigation and a briefing for which the contents were later leaked in order paint the investigation in a false light.*

As Senator Johnson and I have publicly noted, on July 13, 2020, then-Minority Leader Chuck Schumer, Senator Mark Warner, Speaker Nancy Pelosi and Representative Adam Schiff sent a letter, with a classified attachment, to the FBI to express a purported belief that Congress was the subject of a foreign disinformation campaign.  The July 13, 2020, letter included unclassified elements that, among other things, unsuccessfully attempted to tie our investigative work to foreign disinformation.  Those unclassified elements were later leaked to the press to try and smear our Biden investigation as unrelated foreign disinformation.  Then, on July 16, 2020, then-Ranking Member Peters and then-Ranking Member Wyden requested a briefing on matters related to my and Senator Johnson's Biden investigation from the very same FBI HQ team that discredited the derogatory Hunter Biden information.  The concurrent opening of Auten's assessment, the efforts by the FBI HQ team and the efforts by the FBI to provide an unnecessary briefing to me and Senator Johnson that provided our Democratic colleagues fodder to falsely accuse us of advancing foreign disinformation draws serious concern.

*Second, it has been alleged that in September 2020, investigators from the same FBI HQ team were in communication with FBI agents responsible for the Hunter Biden information targeted by Auten's assessment.*  The FBI HQ team's investigators placed their findings with respect to whether reporting was disinformation in a restricted access sub-file reviewable only by the particular agents responsible for uncovering the specific information.  This is problematic because it does not allow for proper oversight and opens the door to improper influence.

Third, in October 2020, an avenue of additional derogatory Hunter Biden reporting was ordered closed at the direction of ASAC [Assistant Special Agency in Charge of the FBI Washington Field Office Timothy] Thibault.[1]  My office has been made aware that FBI agents responsible for this information were interviewed by the FBI HQ team in furtherance of Auten's assessment.  It's been alleged that the FBI HQ team suggested to the FBI agents that the information was at risk of disinformation; however, according to allegations, all of the reporting was either verified or verifiable via criminal search warrants.  In addition, ASAC Thibault allegedly ordered the matter closed without providing a

---

[1] ASAC Thibault has been found by the Office of Special Counsel to have violated the Hatch Act.  Letter from Ana Galindo-Marrone, Chief, Hatch Act Unit, Office of Special Counsel, to Sen. Charles Grassley, Ranking Member, S. Comm. on the Budget (Jan. 19, 2024)  (Ex. 15).

valid reason as required by FBI guidelines.  Despite the matter being closed in such a way that the investigative avenue might be opened later, it's alleged that FBI officials, including ASAC Thibault, subsequently attempted to improperly mark the matter in FBI systems so that it could not be opened in the future.

The aforementioned allegations put a finer point on concerns that I have raised for many years about political considerations infecting the decision-making process at the Justice Department and FBI.  If these allegations are true and accurate, *the Justice Department and FBI are—and have been—institutionally corrupted to their very core to the point in which the United States Congress and the American people will have no confidence in the equal application of the law*.  Attorney General Garland and Director Wray, simply put, based on the allegations that I've received from numerous whistleblowers, *you have systemic and existential problems within your agencies*.  You have an obligation to the country to take these allegations seriously, immediately investigate and take steps to institute fixes to these and other matters before you.

*Id*. at 1–3 (emphasis added) (internal citations omitted).

16.     On July 26, 2022, Senator Johnson sent a letter to Attorney General Garland, DNI Haines, Director Wray, and DOJ Inspector General Michael Horowitz discussing the whistleblower allegations outlined in Senator Grassley's July 25, 2022 letter and raising additional concerns about the August 6 Briefing.  *See generally*, Letter from Ron Johnson, Ranking Member, Permanent Subcomm. on Investigations, S. Comm. on Homeland Security and Governmental Affairs, to Merrick Garland et. al. (July 26, 2022) (Ex. 16).  Sen. Johnson wrote in pertinent part:

If these recent whistleblower revelations are true, it would strongly suggest that the FBI's August 6, 2020 Briefing was indeed a targeted effort to intentionally undermine a congressional investigation.  The FBI being weaponized against two sitting Chairmen of U.S. Senate committees with constitutional oversight responsibilities would be one of the greatest episodes of Executive Branch corruption in American history.

*Id*. at 2.  Moreover, he lambasted the recipients' lack of cooperation with his oversight efforts, writing, "the inability of the FBI and ODNI to be transparent with Congress on this matter and

other matters relating to Hunter Biden is deeply concerning.  Once again, the FBI's integrity has been called into question . . . ."  *Id.*

17.     On August 4, 2022, FBI Director Wray testified before the Senate Judiciary Committee.  *See generally*, *Oversight of the Federal Bureau of Investigation, Hearing Before the S. Comm. on the Judiciary*, 117th Cong (2022) (C.Q. Trans.) (Ex. 17).  In his opening statement as Committee Ranking Member, Senator Grassley stated, in relevant part:

> Director Wray, you'll have to explain to the committee and to the country how you'll manage this mess and how you'll clean house. In conclusion, I'm going to make one last point. In August 2020 -- and I hope my colleagues will pay attention to this timeline. In August 2020, Senator Johnson and I received an unsolicited and unnecessary briefing from the FBI. Now, this briefing reportedly related to our Biden investigation, but in the end the briefing had nothing to do with it. The briefing was instituted after the FBI received pressure from my Democrat colleagues to do just that.
>
> The content of that briefing was later leaked in order to falsely paint the Grassley-Johnson investigation as advancing, you know what, Russian disinformation. That briefing was held the very same month the FBI opened the assessment that was used to label Hunter Biden's information, as you know what, disinformation.
>
> Considering the timing of these events, the timing draws very serious concern. So, I'm asking you, Director Wray, simply put, the FBI's credibility is on the line, as the principles that help found and sustain our great nation are also on the line. Thank you.

*Id.* at 40–41.  In post-hearing questions for the record, Senator Grassley again requested information and material about the August 6 Briefing.  *See generally*, *Oversight of the Federal Bureau of Investigation, Hearing Before the S. Comm. on the Judiciary,* 117th Cong (2022) Post-hearing Questions for the Record from Sen. Charles Grassley (Aug. 11, 2022) (Ex. 18).

18.     On August 26, 2022, Senators Grassley and Johnson wrote to the two individuals that provided them the August 6 Briefing to them—Nikki Floris (Intelligence Analyst in Charge of the FBI's Washington Field Office) and Bradley Benevides (Deputy Assistant Director of the

FBI Counterintelligence Division)—requesting they sit for transcribed interviews. *See* Ex. 8.

The Senators wrote in pertinent part:

> With respect to the substance of the briefing, it consisted primarily of information that we already knew and information unconnected to our Biden investigation. We made clear to you at the briefing that it was not relevant to the substance of our work. In response, you stated that the FBI is not attempting to "quash, curtail, or interfere" in the investigation in any way.  We also made clear our concern that the briefing would be subject to a leak that would shed a false light on the focus of our investigation. Indeed, on May 1, 2021, the Washington Post did exactly that and so did the other inaccurate media articles during the course of our investigation which falsely labeled our investigation as advancing Russian disinformation. Moreover, whistleblowers have recently alleged that in August 2020, the same month you provided the briefing to us, FBI officials initiated a scheme to downplay derogatory information on Hunter Biden for the purpose of shutting down investigative activity relating to his potential criminal exposure by labeling it "disinformation."  Whistleblowers have also alleged that local FBI leadership instructed employees not to look at the Hunter Biden laptop immediately after the FBI had obtained it.
>
> At the briefing as well as after, we requested relevant records relating to what happened at the briefing, including the 302 or similar summary, the intelligence basis for the briefing and the personnel involved in making the decision to brief us. On August 12, 2020; May 3, 2021; July 25, 2022; and August 11, 2022, those requests were made.  The FBI has consistently failed to respond in full to each request and failed to provide those critical records which casts further doubt on the true purpose for the briefing.
>
> Simply put, the unnecessary FBI briefing provided the Democrats and liberal media the vehicle to spread their false narrative that our work advanced Russian disinformation. Although you stated that the FBI didn't intend to "interfere" in our investigation, the practical effect of such an unnecessary briefing and the subsequent leaks relating to it created interference, which frustrated and obstructed congressional oversight efforts.
>
> The FBI answers to Congress and the American people; therefore, we request that you appear before us for a transcribed interview on these and related matters no later than September 8, 2022. In addition, at the time of our initial request in

August 2020, all records relating to the briefing should have been preserved.  This
letter reiterates that request.

*Id*. at 2–4 (internal citations omitted).

19.     On November 17, 2022, Director Wray testified before the Senate Committee on

Homeland Security and Governmental Affairs.  *See* Ex. 9.  At the hearing, Senator Johnson

asked Director Wray who directed the August 6 Briefing, and if he has looked into the leaking of

the briefing to the *Washington Post*.  *Id*.  Director Wray declined to answer either question,

citing the FBI's practice not to discuss specific defensive briefings.

20.     On February 9, 2023, Senators Grassley and Johnson testified before the House

Judiciary Committee, Select Subcommittee on the Weaponization of the Federal Government.

*See generally*, *Hearing on the Weaponization of the Federal Government, Hearing before the H.*

*Comm. on the Judiciary, Select Subcomm, on the Weaponization of Gov't*, 118th Cong (2023)

(C.Q. Trans.) (Ex. 19).  Senator Grassley testified about the briefing in part:

> Simply put, the briefing was unnecessary and completely irrelevant to the
> substance of our [Hunter Biden] investigation.  It was only done because the
> Democrats wanted it done so they could try and smear us.  And the FBI wrongly
> did their bidding.
>
> To this very day, Director Wray refuses to provide Senator Johnson and me, as
> constitutional officers, records related to that briefing, including the alleged
> intelligence basis for it.  Director Wray has consistently failed to perform the
> duties required of his position.

*Id*. at 12.

21.     On October 31, 2023, Director Wray testified before the Senate Committee on

Homeland Security and Governmental Affairs.  *See generally*, *Threats to the Homeland, Hearing*

*before the S. Comm. on Homeland Security and Governmental Affairs,* 118th Cong. (2023) (C.Q.

Trans.) (Ex. 20).  At the hearing, Senator Johnson discussed his belief that the FBI had become

politicized and discussed the August 6 Briefing.  In particular, Senator Johnson said:

> The FBI maintained over 40 confidential human sources that provided criminal
> information related to Joe Biden, James Biden and Hunter Biden.  An essential
> question that must be answered in this, did the FBI investigate the information or
> shut it down?
>
> Certainly, there's a host of reasons to conclude that they attempted to shut it
> down.  It goes on.  It has been alleged that the basis for shutting down the
> investigative activity, shutting it down was an August 2020 Assessment created
> by FBI Supervisory Intelligence Analyst, Brian Auten.  That assessment was used
> by FBI headquarters team to improperly discredit negative Hunter Biden
> information as disinformation that caused investigative activity to cease.
>
> It goes on. Analyst Brian Auten opened the aforementioned assessment, which
> was used by the Foreign Influence Task Force to seek out CHS holdings at FBI
> field offices across the country relating to the Biden—Biden family and falsely
> discredit them as foreign—disinformation.  My staff called that catch and kill.
>
> And by the way, it was that same task force that gave Senator Grassley and I our
> unsolicited briefing that was later leaked to the media to smear me and impact my
> 2022 election.  Senator Grassley concludes, there appears to be an effort within
> the Justice Department and FBI to shut down investigative activity relating to the
> Biden family.
>
> Such decisions—such decisions point to significant political bias, infecting the
> decision making of not only the attorney general and FBI director, but also line
> agents and prosecutors.  Our republic cannot survive such a political infection.
> And you have an obligation to this country to clear the air.

*Id*. at 114.

## PLAINTIFF'S FOIA REQUEST

22.    Plaintiff submitted her FOIA Request on April 26, 2023.  *See* Ex. 1.

23.    The Request sought FBI records related to the August 6 Briefing.  Specifically,

the Request sought:

> 1.   All records preparing for, notating, memorializing or summarizing the August 6, 2020 FBI briefing to Senator Charles Grassley and Senator Ron Johnson;
> 2.   All communications between the FBI and Congress referring to the August 6, 2020 FBI briefing to Senator Charles Grassley and Senator Ron Johnson;
> 3.   All communications between the FBI and the press relating to the August 6, 2020 FBI briefing to Senator Charles Grassley and Senator Ron Johnson;
> 4.   All records relating to the responses to letters from Senator Charles Grassley or Senator Ron Johnson about the August 6, 2020 FBI briefing to Senator Charles Grassley and Senator Ron Johnson;
> 5.   Records sufficient to show shy the FBI offered the briefing to Senator Charles Grassley and Senator Ron Johnson that occurred on August 6, 2020;
> 6.   All communications between the FBI employees assigned to the Foreign Influence Task Force and the following members of Congress or their staff:
>> a.  Representative Nancy Pelosi;
>> b.  Representative Adam Schiff;
>> c.  Senator Charles Schumer;
>> d.  Senator Ron Wyden;
>> e.  Senator Mark Warner; and
>> f.  Senator Gary Peters
> 7.   All records referring or relating to an alleges assessment opened by FBI Supervisory Intelligence Analyst Brian Auten about Hunter Biden; and
> 8.   All records from the following custodians containing the terms "Grassley" or "Johnson":
>> a.  Christopher Wray
>> b.  Timothy Thibault
>> c.  Nikki Flores
>> d.  Bradley Benavides
>> e.  Brian Auten
>> f.  Elvis Chan
>> g.  Laura Dehmlow; and
>> h.  Jill Tyson

Request at 1–2.

24.     The Request sought records from January 1, 2020, to the present.  *Id*. at 2.

25.     The Request sought records from the Office of the Director, Washington Field Office, Foreign Influence Task Force, Counterintelligence Division, Office of the General Counsel, Office of Congressional Affairs, and the Office of Public Affairs.  *Id*.

26.     The Request sought a fee waiver based on the public interest in:  (1) the FBI's motivations for providing the August 6 Briefing to Senators Johnson and Grassley, (2) whether the contents of the August 6 Briefing was leaked to the news media, (3) the FBI's motivations to discredit Senators Grassley and Johnson's investigation into Hunter Biden, (4) the FBI's responsiveness to Congressional oversight about the August 6 Briefing, and (5) the effect the leak had on the 2022 Wisconsin Senate race.  In addition, Plaintiff is an investigative journalist for *The Daily Signal*, a major news outlet operated by the Heritage Foundation.  *Id.* at 5–8.

27.     The Request sought expedited processing pursuant to 28 C.F.R. § 16.5(e)(1)(iv), because the controversy surrounding the August 6 Briefing is "a matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence."  *Id*. at 8–23.

28.     In support of its application for expedited processing, the Request attached five appendices totaling 642 pages that included congressional records surrounding the August 6 Briefing and media commentary and coverage about the briefing.  *See* Appendices A–E, *available at https://thf_media.s3.amazonaws.com/2023/Oversite_Project/Grassley-Johnson_Briefing_Appendix_A-E.pdf*.

29.     To support its application for expedited processing, the Request discussed the background of the August 6 Briefing and the intense media and Congressional interest

16

concerning the FBI's motivations for providing the briefing, their responses to Congressional oversight of the briefing and broader accusations of a weaponized FBI and Justice Department. *See* Request at 8–23.

### DEFENDANT CONSTRUCTIVELY DENIED PLAINTIFF'S FOIA REQUEST

30.     Defendant sent Plaintiff a letter dated May 16, 2023, assigning the Request FOIPA Request No. 1591528-000 and denying Plaintiff's application for expedited processing. *See* Letter from Joseph Bender, Acting Section Chief, Record/Information Dissemination Section, Information Management Division, Fed. Bureau of Investigation (May 16, 2023) ("Assignment Letter") (Ex. 21).  The Assignment Letter stated Plaintiff did "not provide enough information concerning the statutory requirements for expedition; therefore, your request is denied."  *Id*.

31.     Defendant sent Plaintiff a letter dated February 2, 2024, granting Plaintiff's request for a fee waiver.  *See* Letter from Joseph Bender, Acting Section Chief, Record/Information Dissemination Section, Information Management Division, Fed. Bureau of Investigation (Feb. 2, 2024) ("Fee Waiver Letter") (Ex. 22).

32.     Plaintiff did not receive either the Assignment or the Fee Waiver Letters until April 2024.  Plaintiff moved from the address she resided in when she submitted the FOIA and the FBI sent hard copy mail of the correspondence instead of corresponding via email as Plaintiff requested.  *See* Request at 23.

33.     On February 5, 2024—more than nine months after Plaintiff submitted the Request—Defendant contacted Plaintiff about the Request for the first time.  *See* Email from FBI FOIPA Negotiations to Plaintiff (Feb. 5, 2024) (Ex. 23).  The correspondence read:

We're contacting you in reference to the FOIPA request number included in the subject line of this email.  The FBI located approximately 17,039 pages potentially responsive to your request.

Requests are processed in the order in which they are received through our multi-track processing system:

Small track requests (0-50 pages) current average time is approximately 4 months to complete;

Medium track requests (51-500 pages) current average time is approximately 41 months to complete;

Large track requests (501-4,999 pages) current average time is approximately 67 months to complete; and

Extra-large track requests (over 5,000 pages) current average time is approximately 79 months to complete.

The current average time to complete your extra-large track request is at least 79 months. Reducing the scope of your request may accelerate the processing, allow for a timelier receipt of the information you seek, and reduce the duplication costs, if applicable.  Would you be willing to consider reducing the scope of your request to place it in a smaller, potentially faster processing track?

Please let us know if this is something you would be interested in further discussing. If you chose to narrow the scope of your request, you will be able to request remaining material via a new FOIPA request submission at the completion of this request, subject to applicable fees.

*Id*.  Defendant emailed on February 15 and February 20, 2024, following up on the original correspondence.  *Id*.

34.     Plaintiff responded on February 21, 2024, seeking a phone call to discuss the Request.  *See* Email from Plaintiff to FBI FOIPA Negotiations (Feb. 21, 2024) (Ex. 24).  On February 22, 2024, Defendant responded declining a phone call, stating "we generally chat by email for documentation purposes."  Email from FBI FOIPA Negotiations to Plaintiff (Feb. 22, 2024) *Id*.  The correspondence further stated "[n]one of the material has been reviewed by a disclosure analyst, so we are limited in what we can say, but we can tell you that the date range of the material is January 1, 2020 through May 2023."  *Id*.  The FBI presented several options for

18

narrowing and asked how Plaintiff would like to proceed.  *Id.*  The FBI followed up via email on

February 27, 2024.  *Id.*

35.     Recall, Plaintiff did not receive the previously mailed correspondence prior to

receiving the email correspondence from Defendant.  As a result, she was at a significant

information deficit compared to Defendant about the status of the Request.  Plaintiff responded

to Defendant on February 28, 2024, with a series of questions aimed at narrowing that

information deficit.  *See* Email from Plaintiff to FBI FOIPA Negotiations (Feb. 28, 2024)

(Ex. 25).  The correspondence read:

> We requested expedited processing for the request, but do not have a record of the
> FBI making a decision on that request.  Can you please advise on whether we
> have been granted expedited processing and the effect that would have on the
> potential response time?
>
> We also have some additional questions about the ~17,000 pages of responsive
> records identified to date.  The answers to these questions will help determine
> next steps.
> - Can you identify the number of responsive pages by specification
> - Can you identify the custodians searched, and if not specific
>   custodians, can you identify the departments/subcomponent offices
>   searched?
> - Can you identify the search terms used, broken down by
>   specification?
> - Can you identify how many of the pages or a rough percentage of
>   pages that are merely press clippings?
> - Can you identify how many of the pages are duplicates?

*Id*.

36.     On March 1, 2024, the FBI responded in two emails.  *See* Emails from FBI

FOIPA Negotiations to Plaintiff (Mar. 1, 2024) (Ex. 26).  In the first email, Defendant wrote,

> Thank you for your email; correspondence regarding your request for expedited
> processing was mailed to you on May 16, 2023.  I'll put another copy of that letter
> in the mail to you today.  Regarding your other questions, until the material has
> been reviewed by a disclosure analyst, we are unable to address specific contents,

unfortunately, but we can tell you that there don't appear to be many duplicates, nor does there appear to be much in the way of news articles.  Should we encounter those, we would be happy to eliminate them for you.

Please let us know how you would like to proceed with the request.

*Id*.  In the second email, Defendant wrote, "[w]e've received two returned mail items that were sent to your Kleinman Avenue address.  Did you have an updated address for your account?  I will mail copies of both items to your new address."  *Id*.

37.     Plaintiff responded on March 4, 2024.  *See* Email from Plaintiff to FBI FOIPA Negotiations (Mar. 4, 2024) (Ex. 27).  Plaintiff wrote, "[i]n the interest of time, would you be able to attach the expedited processing determinations and/or any previously mailed correspondence about this request to this email chain?  In the future, please send any correspondence to me via email."  *Id*.  Plaintiff provided an updated address for mailed correspondence.  *Id*.

38.     On March 5, Defendant emailed that it was "unable to email those letters to [Plaintiff] at the moment, so I'll put them in the mail to you at the new address" and suggested touching base once Plaintiff had a chance to review the correspondence.  Email from FBI FOIPA Negotiations to Plaintiff (Mar. 5, 2024) (Ex. 28).

39.     On March 6, 2024, Plaintiff responded with the following:

How are you unable to email a copy of the correspondence?  Sending the letters via snail mail is quite inefficient and only further delays resolution of this matter.  I reiterate my request to receive the previously mailed correspondence via email and request that all correspondence regarding FOIA requests are conducted via email.

Can you at least confirm or deny whether expedited processing has been granted for this request?

Email from Plaintiff to FBI FOIPA Negotiations (Mar. 6, 2024) (Ex. 29).

40.     On March 13, 2024, the FBI responded, "[u]nfortunately sending the letters by mail was the only option at the time.  Please let us know when you have received them and we can continue discussion regarding how you would like to move forward with the request."  Email from FBI FOIPA Negotiations to Plaintiff (Mar. 13 and Mar. 20, 2024) (Ex. 30).  Defendant followed up on March 20, 2024, inquiring whether Plaintiff wished to narrow the scope of her request.  *Id*.

41.     On March 22, 2024, Plaintiff responded with the following:

I still have not received the correspondence regarding expedited processing you indicated would be mailed on or about March 5.  Can you confirm which address you mailed the materials to?

I still do not understand how, in the 21st century, the FBI is unable to scan a document.  Please scan the materials and attach them to this email chain.  Or in the alternative, please answer the questions I posed earlier in the email chain.  I can not [Sic] make an informed decision on how to proceed with this request without reviewing correspondence or having access to the information I have sought.

Email from Plaintiff to FBI FOIPA Negotiations (Mar. 22, 2024) (Ex. 31).

42.     The FBI responded on March 22, 2024.  Email correspondence between Plaintiff and from FBI FOIPA (Mar. 22–23, 2024) (Ex. 32).  The FBI confirmed that Plaintiff's request for expedited processing had been denied and that the letters had been mailed on March 5, 2024 to the address provided on March 4, 2024.  *Id*.  The FBI suggested ways to narrow the Request.  *Id*.  Plaintiff responded later that day reiterating her request for the FBI to scan and email the relevant correspondence so that she can make an informed decision.  *Id*.  The next day, on March

23, 2024, Plaintiff realized there had been a typo in the address previously provided to Defendant and emailed the FBI the correct address to mail the correspondence.[2]  *Id*.

43.     On March 25, 2024, Defendant emailed Plaintiff, "I will forward your request to the assigned analyst.  I take it that for now you're not interested in narrowing the request, correct?"  Email correspondence between Plaintiff and FBI FOIPA Negotiations (Mar. 25, 2024) (Ex. 33).  Plaintiff responded the same day:

> How can you honestly, in good faith, come to the conclusion that I am not interested in narrowing the request?  Nothing in our correspondence would indicate that.  For weeks, you have refused to send me the correspondence containing key details about the FBI's fulfillment of the request.  As I have explained, I am at a significant information deficit and cannot make an informed decision on narrowing or next steps until I have reviewed the correspondence.
>
> We can move things along more quickly if you just attached scanned copies of the letters you've tried to mail.  Please attach all correspondence previously mailed so I can make a decision on next steps.  Or in the alternative, please mail all copies of letters to the corrected address below per my March 23 email.
>
> 118 Whiting Street
> Galveston, Texas 77550

*Id*.  The FBI responded the same day:

> I beg to differ – that correspondence was re-sent to you on March 5 to the address you provided.  You've provided a corrected address, so another copy will be mailed to you.
>
> My interpretation was that you wished to wait for the correspondence.  If that's not the case, we can go ahead and take care of the scope reduction.  As mentioned previously, the documents range in date from March 2020 through May 2023. We generally narrow by date, although many requesters opt for up to either the first or last 50 pages for a small track request or 500 pages for a medium track request.  If you have a particular date in mind, we can structure the request that way as well.

---

[2] The March 4, 2024, email instructed the FBI to mail the correspondence to 118 Whiting Ave., Galveston, TX, 77550 and the March 23, 2024, email instructed the FBI to mail the correspondence to 118 Whiting St., Galveston, TX, 77550.

*Id*.  Plaintiff replied the same day:

> Wanting to review the correspondence concerning the request is in no way, shape, or form, an indication that we're "not interested" in narrowing the request.  Such an interpretation is unreasonable.  As mentioned throughout our communications, I can't make an informed decision on narrowing the scope based on incomplete information.  Can you confirm that the correspondence has been mailed?  We can circle back once I receive the correspondence.

*Id*.  The FBI confirmed on March 28, 2024, that the letters had been mailed to the correct address on March 26, 2024.  Email from FBI FOIPA Negotiations Staff to Plaintiff (Mar. 28, 2024) (Ex. 34).

44.     The FBI followed up on April 4 and April 10, 2024, asking whether Plaintiff had received the correspondence.  *See* Email correspondence between FBI FOIPA Negotiations and Plaintiff (Apr. 4–10, 2024) (Ex. 35).  By that point, Plaintiff had determined to initiate this action.

45.     Twenty business days from April 26, 2023, is May 24, 2023.

46.     As of the date of this filing, Defendant has failed to produce any records, responsive or other, in response to this request nor has it otherwise demonstrated that the requested records are exempt from production.

## FIRST CLAIM FOR RELIEF
### Violation FOIA, 5 U.S.C. § 552
### Failure to Conduct Adequate Searches for Responsive Records.

47.     Plaintiff re-alleges the foregoing paragraphs as if fully set out herein.

48.     FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration."  Attorney General, *Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

49.     Plaintiff properly requested records within the possession, custody, and control of Defendant.

50.     Defendant is subject to FOIA and therefore must make reasonable efforts to search for requested records.

51.     Defendant has failed to promptly review agency records for the purpose of locating and collecting those records that are responsive to Plaintiff's FOIA Request.

52.     Defendant's failure to conduct searches for responsive records violates FOIA and DHS regulations.

53.     Plaintiff has a statutory right to the information they seek.

54.     Defendant is in violation of FOIA.

55.     Plaintiff is being irreparably harmed by reason of Defendant's violation of FOIA. Plaintiff is  being denied information to which she is statutorily entitled and that is important to carrying out Plaintiffs' functions as an investigative journalist.  Plaintiff will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

56.     Plaintiff has no adequate remedy at law.

57.     Plaintiff has constructively exhausted her administrative remedies.

### SECOND CLAIM FOR RELIEF
### Violation of FOIA, 5 U.S.C. § 552
### Wrongful Withholding of Non-Exempt Responsive Records

58.     Plaintiff re-alleges the foregoing paragraphs as if fully set out herein.

59.     FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration."  Attorney General, *Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

60.     Plaintiff properly requested records within the possession, custody, or control of Defendant.

61.     Defendant is subject to FOIA, and therefore must release to a FOIA requester any non-exempt records and provide a lawful reason for withholding any records.

62.     Defendant is wrongfully withholding non-exempt records requested by Plaintiff by failing to produce any records responsive to her FOIA Request.

63.     Defendant is wrongfully withholding non-exempt-agency records requested by Plaintiff by failing to segregate exempt information in otherwise non-exempt records responsive to Plaintiff's FOIA Request.

64.     Defendant's failure to provide all non-exempt responsive records violates FOIA and DHS regulations.

65.     Plaintiff has a statutory right to the information she seeks.

66.     Defendant is in violation of FOIA.

67.     Plaintiff is being irreparably harmed by reason of Defendant's violation of FOIA. Plaintiff is being denied information to which she is statutorily entitled and that is important to carrying out Plaintiff's functions as an investigative journalist.  Plaintiff will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

68.     Plaintiff has no adequate remedy at law.

69.     Plaintiff has constructively exhausted her administrative remedies.

## THIRD CLAIM FOR RELIEF
### Violation of FOIA, 5 U.S.C. § 552
### Wrongful Denial of Expedited Processing

70.     Plaintiff re-alleges the foregoing paragraphs as if fully set out herein.

71.     FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration."  Attorney General, Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines, at 4 (Mar. 15, 2022).

72.     Plaintiff properly requested records within the possession, custody, or control of Defendant.

73.     Plaintiff properly asked that Defendant expedite the processing of Plaintiff's Request because the controversy surrounding the August 6 Briefing "a matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence."  28 C.F.R. § 16.5(e)(1)(iv).

74.     Defendant refused to expedite Plaintiff's FOIA Request, contrary to the factual and legal showing Plaintiff made demonstrating her entitlement to expedition.

75.     Defendant is in violation of FOIA.

76.     Plaintiff is being irreparably harmed by reason of Defendant's violation of FOIA. Plaintiff is being denied information to which she is statutorily entitled to on an expedited basis and that is important to carrying out Plaintiff's functions as an investigative journalist.   Plaintiff will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

77.     Plaintiff has no adequate remedy at law.

78.     Plaintiff is entitled to seek immediate judicial relief for DOJ's denial of expedited processing.  *See* 5 U.S.C. § 552(a)(6)(E)(iii) ("Agency action to deny . . . a request for expedited

processing pursuant to this subparagraph . . . shall be subject to judicial review."); *Pub. Health & Med. Pros. for Transparency v. Food & Drug Admin.*, 672 F.Supp.3d 253, 255 (N.D. Tex. 2023) ("If an agency denies a request for expedited processing under FOIA, the decision is subject to immediate judicial review.").

**WHEREFORE** as a result of the foregoing, Plaintiffs pray that this Court:

A.   Enter a preliminary and permanent injunction compelling Defendant to process Plaintiff's FOIA request on an expedited basis.

B.   Order Defendant to conduct a search or searches reasonably calculated to uncover all records responsive to Plaintiffs' FOIA Request;

C.   Order Defendant to produce, within twenty days of the Court's order, or by such other date as the Court deems appropriate, any and all non-exempt records responsive to Plaintiffs' FOIA Request and indexes justifying the withholding of any responsive records withheld in whole or in part under claim of exemption;

D.   Enjoin Defendant from continuing to withhold any and all non-exempt records responsive to Plaintiffs' FOIA Request;

E.   Enjoin Defendant from assessing fees or costs for Plaintiffs' FOIA Request;

F.   Retain jurisdiction over this matter as appropriate;

G.   Award Plaintiffs their costs and reasonable attorneys' fees in this action as provided by 5 U.S.C. § 522(a)(4)(E); and

H.   Grant such other and further relief as this Court may deem just and proper.

Dated:  May 13, 2024       Respectfully submitted,

/s/ Samuel Everett Dewey
SAMUEL EVERETT DEWEY
(No. 999979)
Chambers of Samuel Everett Dewey, LLC
Telephone:  (703) 261-4194
Email: samueledewey@sedchambers.com

DANIEL D. MAULER
(No. 977757)
The Heritage Foundation
Telephone: (202) 617-6975
Email: Dan.Mauler@heritage.org


*Counsel for Plaintiffs*